**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

HORACE MOORE,

Plaintiff,

v.

MARK MAYE, *et al.*,

Defendants.

---

9:24-CV-1105
(LEK/DJS)

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| HORACE MOORE<br>Plaintiff, pro se<br>10-A-5450<br>Five Points Correctional Facility<br>Caller Box 119<br>Romulus, New York 14541 | |
| HON. LETITIA JAMES<br>New York State Attorney General<br>Attorney for Defendants<br>The Capitol<br>Albany, New York 12224 | ALEXANDRA L. GALUS, ESQ.<br>Assistant Attorney General |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights while he was held in custody at Clinton Correctional Facility ("Clinton C.F."). Dkt. No. 1, Compl. Defendants Lt. Allen, C. Liberty, J. Makee, and M. Peck have now moved, prior to answering the Complaint, to partially dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 35. Plaintiff opposed the Motion. Dkt. No. 44, Pl.'s Opp. Defendants filed a reply. Dkt. No. 45.[2]

For the reasons that follow, the Court recommends that the Motion to Dismiss be **DENIED**.

## I. BACKGROUND

Plaintiff Horace Moore ("Moore" or "Plaintiff") alleges in his Complaint that his Eighth Amendment and Fourteenth Amendment rights were violated by Lt. Allen ("Lt. Allen"), C. Liberty ("Liberty"), J. Makee ("Makee"), M. Peck ("Peck"), Mark Maye ("Maye"), Leigh Martin ("Martin"), and Steven Wood ("Wood"). *See generally* Compl. Defendants Liberty, Makee, and Peck seek dismissal of Eighth Amendment claims

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] Plaintiff has also filed a Motion for a Clerk's Entry of Default related to Defendants' purported failure to appear in this action. Dkt. No. 23. Defendants, however, have now appeared and so the Court recommends that this Motion be denied.

related to a strip search. Dkt. No. 35-1, Defs.' Mem. of Law at pp. 3-7. Defendant Lt. Allen seeks dismissal of the Fourteenth Amendment claim against him. *Id.* at pp. 7-9.

According to the Complaint, on March 16, 2022 at Clinton C.F., Moore was taken out of his cell—A-Block 3-21—by Correctional Officers Maye and Martin. Compl. at p. 5. Plaintiff claims this occurred for reasons unknown to him. *Id*. Plaintiff claims that he was "in fear for his life" and that he was the only individual taken out of their cell on a Corrections Officer ("C.O.") training day. *Id*. Following the removal of Plaintiff from his cell, he was pepper-sprayed in the Lower-F block draft room by Officer Wood. *Id.* Further, during this incident, Moore was grabbed by the neck by C.O. Maye, thrown to the ground, and kicked in the ribs. *Id*. Plaintiff stated that while he was on the ground he was "beaten all over the body" with baton sticks by C.O.s Maye, Martin, Wood and about 6 to 7 other unknown officers. *Id*. Additionally, Moore alleged that C.O. Maye ripped his dreadlocks out and made comments regarding "did they get a souvenir," joking about Plaintiff's dreadlocks while he continued to be beaten by other C.O.s. *Id*.

Following this incident, Plaintiff was handcuffed and taken to the Facility Hospital by Liberty and Makee who were being supervised by Sergeant ("Sgt.") Peck. *Id*. Plaintiff claimed that at Clinton C.F.'s Hospital he continued to be beaten and was placed in a room with no cameras. *Id*. While Plaintiff was in this room he alleges that

Sgt. Peck ordered Makee and Liberty to conduct a strip search. *See* Compl. at pp. 5-6. Further, Plaintiff stated that before the strip search his face was slammed into the "corner of a wall," and then his "pants and boxers were pulled down" while he was "going in and out of consciousness." *Id*. Plaintiff claimed he felt the C.O.'s "fingers going in and out" of his anus while Makee and Liberty asked, "where is the weapon." *See* Compl. at 6. While Moore was in an observation room he threw up blood. *Id*. On March 22, 2022, Plaintiff alleges that he was released from the observation cell because there was "no weapon" but he was then placed in the facility's Special Housing Unit ("SHU") for misbehavior charges unknown to him. *Id*.

On March 23, 2022, Plaintiff was served with three Tier III misbehavior reports alleging infractions including Assault on an Inmate – Fighting, Violent Conduct, and Creating a Disturbance. *Id*. The first misbehavior report against Plaintiff was brought due to an identification through the use of a photo array, where an inmate identified Plaintiff as the person that assaulted another inmate. *See id.* at p. 7. The second misbehavior report makes allegations that Plaintiff ran from officers escorting him and allegedly kicked a corrections officer. *Id*. The third misbehavior report alleged that on March 16, 2022, Moore had an X-ray taken and there was a foreign body located in his body. *Id*. Lt. Allen found Moore guilty of multiple charges. *Id.* at pp. 7-8. The penalties

that were imposed included 707 days in SHU, 707 days loss of packages, and 707 days loss of commissary. *Id.* at p. 8.

## II. LEGAL STANDARD

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

The Court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the Plaintiff's

complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, in spite of the deference the court is bound to give to Plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Nonetheless, a *pro se* complaint must state a plausible claim for relief. *See Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).

## III. DISCUSSION

### A. Plaintiff's Eighth Amendment Claim

#### *1. Sexual Assault*

"A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015). Searches of inmates, however, "are a common incident in prison life." *Daum v. Devlin*, 2024 WL 4133824, at *3 (N.D.N.Y. July 11, 2024), *report and recommendation adopted*, 2024 WL 3823475 (N.D.N.Y. Aug. 15, 2024). "To be sure, prison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches." *Crawford v. Cuomo*, 796 F.3d at 258. "In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast

whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id. at* 257–58.

Defendants argue that the strip search was conducted with a legitimate penological purpose and thus Plaintiff's claim with respect to it must be dismissed. Defs.' Mem. of Law at pp. 4-5. Defendants allege that this legitimate penological purpose was established from Moore's conduct of running away from the C.O.s after being "positively identified as a perpetrator who assaulted another incarcerated individual." *Id*. at pp. 4-5. The Complaint alleges that Plaintiff was, in fact, misidentified as the perpetrator of the assault relied on by Defendants and that at the time of the strip search Plaintiff was compliant and cuffed. Pl.'s Opp. at pp. 6-8. Additionally, he states in his Complaint that the strip search was conducted while he was falling in and out of consciousness. Compl. at p. 6. Plaintiff claims that Defendants acted without a legitimate penological purpose and in a manner to humiliate him. Pl.'s Opp. at p. 8.

Taken together, Plaintiff's allegations counsel against dismissal of Plaintiff's claims. *George v. City of New York*, 2013 WL 5943206, at *7 (S.D.N.Y. Nov.6, 2013) ("[S]trip searches performed with no legitimate penological purpose but merely to intimidate, harass, or punish are impermissible."). Plaintiff's Complaint goes so far as to concede that some search of his person may have been supported by a legitimate

penological interest, but that the manner in which the strip search in particular was conducted "exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." Compl. at p. 12. He highlights, for example, his claim that he was compliant with staff direction and that he was handcuffed and thus less of a threat at the time of the strip search. Pl.'s Opp. at pp. 6-8. Plaintiff also appears to allege that multiple Defendants conducted the anal cavity search. Compl. at p. 12. Under these circumstances, the question of whether Defendants' particular actions served a legitimate penological purpose or, as Plaintiff alleges, exceeded the scope of what was necessary is a fact-bound one that cannot be decided given the allegations identified above. Plaintiff also alleges that no weapon was ever discovered on his person. *Id.* at p. 6. "Whether Plaintiff had contraband on him is material to Defendants' purported penological purpose for the manual cavity search." *Layne v. Panzarella*, 2022 WL 2343184, at *6 (S.D.N.Y. June 29, 2022).

It is Defendants' burden to prove that there was a legitimate penological purpose of the body cavity search. *See generally Harris v. Miller*, 818 F. 3d 49 (2d Cir. 2016). On a more fully developed record, they may well be able to establish that there was, but at this stage of the proceedings, where Plaintiff's allegations must be taken as true, denial of the Motion is the most appropriate course.

*2. Physical Force*

Defendants also briefly argue that Plaintiff's claim that he was slammed face first into the corner of wall should be dismissed as a *de minimis* use of force. Defs.' Mem. of Law at p. 6. This aspect of the Motion should be denied.

"The Eighth Amendment's prohibition of 'cruel and unusual punishment' necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to a conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). As stated by the Second Circuit, "*Hudson* simply makes clear that excessive force is defined as force not applied in a 'good faith effort to maintain or restore discipline.'" *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (quoting *Hudson v. McMillian*, 503 U.S. at 7). At this early stage of the proceedings, Plaintiff's complaint that he was "slammed face first in to the corner of a wall," Compl. at p. 6, sufficiently alleges more than a *de minimis* action which warrants denial of this aspect of the Motion. This is especially true given the allegation that he suffered serious injuries as a result of the alleged assault. *See* Compl. at pp. 6 & 13.

For these reasons, the Court recommends that the Motion to Dismiss some of Plaintiff's Eighth Amendment claims be denied.

**B. Plaintiff's Fourteenth Amendment Due Process Claim Against Lt. Allen**

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV. For a Plaintiff to "successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process." *Rasheen v. Adner*, 356 F. Supp. 3d 222, 236-237 (N.D.N.Y. 2019); *see also Ortiz v. McBride*, 380 F. 3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F. 3d 69, 79-80 (2d Cir. 2000).

The due process protections that inmates facing disciplinary hearings are afforded when they have a liberty interest include "advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination." *Toliver v. Fischer*, 2016 WL 3351974 at *8 (N.D.N.Y. 2016) (citing *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004)). Moreover, "[t]he hearing officer's findings must be supported by 'some' 'reliable evidence.'" *Id*. (quoting *Sira v. Morton*, 380 F. 3d at 69).

Defendants do not deny that Plaintiff has adequately alleged a protected liberty interest. Defs.' Mem. of Law at p. 7. Instead, they argue that Plaintiff's Complaint did

not allege any inadequacy in the due process he received. *Id*. Defendants are correct that to the extent Plaintiff's Complaint is based on application of the fruit of the poisonous tree doctrine he fails to state a claim because that doctrine is not applicable to 42 U.S.C. § 1983 claims. *See DiMascio v. City of Albany*, 2000 WL 232053 at *1 (2d Cir. 2000). However, the pleadings thus far do allege sufficient facts to permit this claim to proceed to discovery.

The Complaint specifically alleges that he was found guilty of certain charges contained in the misbehavior reports despite "[d]ocumentary evidence [and] witness testimony" that he was not guilty of some the charges. Compl. at p. 8. He reiterates that claim in opposition to the Motion. Pl.'s Opp. at pp. 9-11. These allegations can be read to assert that the hearing determination was not supported by some evidence. "Plaintiff's claims, liberally construed, while slim, are at least sufficient to survive a motion to dismiss." *Santos v. Keenan*, 2020 WL 2859202, at *6 n.9 (W.D.N.Y. Feb. 6, 2020), *report and recommendation adopted*, 2020 WL 1025189 (W.D.N.Y. Mar. 3, 2020).[3] The Court, therefore, recommends that the Motion to Dismiss the due process claim be denied.

[3] In reaching this conclusion, the Court notes that the "some evidence" standard is a low bar and on a more fully developed record Defendants may well be able to establish that Plaintiff's allegations challenge only the weight of the evidence and thus do not present a due process claim. *See Tate v. Robinson*, 1998 WL 214429, at *2 (N.D.N.Y. Apr. 23, 1998).

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Motion to Dismiss (Dkt. No. 35) be **DENIED** as set forth above; and it is further

**RECOMMENED**, that the Motion for a Default Judgment (Dkt. No. 23) be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72

---

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

& 6(a).

Date: January 9, 2026
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge